IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS P. HEALY,

Plaintiff,

v.

MARION COUNTY JAIL,
DR. LOBERG, COMMANDER
LARSON, JACOB RAMSEY,
SGT. DUNBAR, CINDY B.,
MED. DIR. SARAH RN,

Defendants.

No. 6:24-cv-01879-HZ

OPINION & ORDER

Thomas P. Healy
6441878
Two Rivers Correctional Institution
82911 Beach Access Road
Umatilla, OR 97882-9419

Plaintiff, *Pro Se*

Cody Hawkins
Assistant County Legal Counsel
555 Court Street Northeast
Suite 5242
Salem, OR 97309

Attorneys for Defendants Marion County Jail, Commander Larson, Jacob Ransey, Sgt. Dunbar, Cindy B., and Med. Dir. Sarah RN

Lorianne G. Hanson
Mary C. Butler
Rachel O'Hanlon
Wilson Elser Moskowitz Edelman & Dicker LLP
520 Pike Street
Suite 2350
Seattle, WA 98101

Attorneys for Defendant Dr. Loberg

HERNÁNDEZ, Senior Judge:

This matter comes before the Court on Marion County Defendants' Motion for Summary Judgment, ECF 58, and Defendant Loberg's Motion for Summary Judgment, ECF 54. For the reasons that follow, the Court grants Defendants' Motions.

**BACKGROUND**

On November 3, 2022, Plaintiff Thomas P. Healey was booked into the Marion County Jail as a pretrial detainee. On April 15, 2025, Plaintiff was transferred to Two Rivers Correctional Institution.

On January 22, 2025, Plaintiff filed a *pro se* Complaint in this Court against Marion County Jail, Commander Larson, Jacob Ramsey, Stg. Dunbar, Cindy B., Medical Director Sarah RN ("County Defendants"), and Dr. Loberg asserting claims under 42 U.S.C. § 1983 for deliberate indifference to his medical needs in violation of the Fourteenth Amendment.

On March 4, 2025, County Defendants filed an Answer in which they asserted affirmative defenses including failure to exhaust administrative remedies. Dr. Loberg filed an Answer on September 24, 2025, and asserted affirmative defenses including failure to exhaust administrative remedies.

On May 26, 2026, Defendants filed motions for summary judgment as to all claims. On

June 2, 2026, Plaintiff was provided with a Summary Judgment Advice Notice. On July 24, 2026, Plaintiff filed a Response to Defendants' Motions. The Court took both Motions under advisement on July 24, 2026.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

County Defendants move for summary judgment on the grounds that Plaintiff did not exhaust his administrative remedies or, in the alternative, that Plaintiff fails to establish the elements of his claim.

**I. Marion County Jail**

Plaintiff lists Marion County Jail as a defendant in the caption of his Complaint. Plaintiff does not set out Marion County Jail as a defendant in the body of his Complaint, but to the extent that Plaintiff intends to bring his claims against Marion County Jail, those claims are barred because Marion County Jail is not a proper defendant under § 1983.

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"'[M]unicipal departments and sub-units of local governments are not generally considered 'persons' within the meaning of Section 1983.'" *Phalen v. Tuolumne Cnty. Jail*, No. 1:25-CV-00521-KES-EPG (PC), 2025 WL 2695568, at *2–3 (E.D. Cal. Sept. 22, 2025), report and recommendation adopted, No. 1:25-CV-00521-KES-EPG (PC), 2025 WL 3451761 (E.D. Cal. Dec. 1, 2025) (quoting *Jay v. Med. Dep't of Fresno Cnty. Jail*, No. 1:10-CV-00685-GBC PC, 2011 WL 3875523, at *4 (E.D. Cal. Sept. 1, 2011) (collecting cases dismissing correctional facilities as improper defendants under § 1983)). The Court concludes that Marion County Jail is not a proper defendant under § 1983. *See Phalen*, 2025 WL 2695568, at *3 ("Tuolumne County

Jail . . . [is] not [a] proper Defendant[] under § 1983"); *Barrera v. Multnomah Cnty. Inverness Jail*, No. 3:23-CV-00146-CL, 2023 WL 4239328, at *1 (D. Or. Feb. 9, 2023), report and recommendation adopted, No. 3:23-CV-00146-CL, 2023 WL 4235599 (D. Or. June 28, 2023) ("Plaintiff cannot bring claims against Multnomah County Inverness Jail because it is a county detention facility and not a 'person' capable of being sued under Section 1983."); *Gatlin v. Bank of Am*., No. 2:23-CV-0272-DAD-KJN P, 2023 WL 2529725, at *2 (E.D. Cal. Mar. 15, 2023) ("Turning to plaintiff's claim against defendant Sacramento County Jail, an agency or department of a municipal entity is not a proper defendant under Section 1983.").

Accordingly, to the extent that Plaintiff intended to bring claims against Marion County Jail, the court grants County Defendants' Motion for Summary Judgment as to those claims.

## II. Failure to Exhaust

County Defendants assert they are entitled to summary judgment because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

### A. Standard

The PLRA provides "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust . . . administrative remedies . . . before bringing suit to challenge prison conditions" unless a remedy is unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quotation omitted). A remedy is unavailable when: (1) the procedure "operates as a simple dead end" because the "relevant administrative procedure lacks authority to provide any relief" or "administrative officials have apparent authority, but decline ever to exercise it"; (2) the "administrative scheme [is] so opaque

that . . . no reasonable prisoner can use" it; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has made clear that courts "may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 136 S. Ct. at 1856. Prisoners must navigate the prison's administrative-review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth v. Churner*, 532 U.S. 731, 739-41 (2001).

An inmate's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "[D]efendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) *overruled in part on other grounds by Perttu v. Richards*, 605 U.S. 460 (2025). "Relevant evidence . . . would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). If the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

**B. Analysis**

Marion County Jail provides a four-step grievance process which is set out in the Marion County Sheriff's Office AIC Handbook. Davis Decl., ECF 58, Ex. 1 ¶ 6. Every inmate

lodged at the jail is provided with a copy of the Handbook and if an inmate loses their copy, additional copies are available "behind the deputy desk in each unit." *Id.* ¶ 7. Copies of the grievance procedure are "also available upon request and are accessible on tablets available" to inmates. *Id.* The form that inmates are provided and required to use when submitting a grievance instructs inmates to follow the grievance procedures set out in the Handbook. *Id.* ¶ 8. The procedures require that an inmate first attempt to verbally resolve his problem with a deputy. *Id.*, Ex. B at 15. Next, the inmate must file a grievance, to which the employee involved must respond within seven days. *Id.* If the inmate is unsatisfied with the response, he must then submit a written appeal to the employee's supervisor. *Id.* If the inmate is not satisfied with the supervisor's response, he must submit a written appeal to the lieutenant. *Id.* If the inmate is unsatisfied with the lieutenant's response, the inmate must complete the final step of the grievance process:

> [Y]ou will have 7 calendar days from the date of receipt to submit a written request for review to the Jail Commander or their designee. This request must be in writing, and on a separate document from the original grievance. The written request for appeal must include a copy of the grievance you are requesting an appeal on. A copy of the grievance and the written request for appeal will be forwarded to the Jail Commander for review.

*Id.* The Commander or their designee has fourteen days from date of receipt of the appeal to respond. An inmate must pursue all levels of appeal of denials to exhaust administrative remedies under these grievance procedures. *See, e.g.*, *Berry v. Wallace*, No. 6:24-CV-00499-AN, 2026 WL 771971, at *5 (D. Or. Mar. 18, 2026) (granting summary judgment for defendants because plaintiff failed to exhaust administrative remedies when he did not fully appeal his grievances submitted while he was in Marion County Jail).

The record reflects that Plaintiff appealed only two grievances through the end of the grievance procedure. Grievance 11113 related to an employee using chewing tobacco. Davis Decl., Ex. C, 25-27. Grievance 5851 related to Plaintiff's placement in A unit due to "being disabled." *Id.*, at 55-59. Neither of these issues is the subject of Plaintiff's claims and Plaintiff "did not appeal any other grievance to the" final review level. Davis Decl. ¶ 14. The Court concludes County Defendants have established that Plaintiff did not exhaust his administrative remedies. Accordingly, the Court grants County Defendants' Motion for Summary Judgment. *See Giles v. Davis*, No. 21-15466, 2023 WL 128614, at *1 (9th Cir. Jan. 9, 2023) (affirming district court's grant of summary judgment of the plaintiff's § 1983 claims for failure to exhaust administrative remedies).[1]

**DEFENDANT LOBERG'S MOTION FOR SUMMARY JUDGMENT**

Dr. Loberg asserts he is entitled to summary judgment because Plaintiff fails to establish deliberate indifference in violation of the Fourteenth Amendment.

## I. Exhaustion of Administrative Remedies

Dr. Loberg is a contract physician for inmates at Marion County Jail, therefore, the PLRA exhaustion requirement applies to Plaintiff's claims against him. *See, e.g., Olive v. Narayan*, No. 115CV01645AWIGSAPC, 2017 WL 3478978, at *4 (E.D. Cal. Aug. 14, 2017) (noting "a private physician employed by the state on a contract basis to provide medical services to inmates act[s] under color of state law when treating a prisoner's injuries" and concluding that the PLRA exhaustion requirement applies to contracted physicians) (quoting *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 925 (9th Cir. 2011)); *Maggio v.*

[1] Because the Court concludes Plaintiff did not exhaust his administrative remedies the Court does not address County Defendants' other bases to dismiss Plaintiff's federal claims.

*Shelton*, No. 14-cv-01682-SI, 2015 WL 5126567, at *6-7 (D. Or. Sept. 1, 2015) (collecting cases that hold "private physicians and medical entities may be considered state actors for purposes of Section 1983 liability when a state has delegated its obligation to provide medical care for inmates to those private entities, even in the absence of a contract").

Dr. Loberg asserted failure to exhaust administrative remedies as an affirmative defense in his Answer, but did not argue exhaustion in his Motion for Summary Judgment. Nevertheless, "a court may grant summary judgment to one party based on evidence supplied by another party." *Berry v. Wallace*, No. 6:24-CV-00499-AN, 2026 WL 771971, at *6 (D. Or. Mar. 18, 2026) (citing *Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 907 (9th Cir. 1996); *NL Indus., Inc. v. GHR Energy Corp*., 940 F.2d 957, 965 (5th Cir. 1991)). To the extent that Dr. Loberg's failure to raise exhaustion in his motion for summary judgment could constitute waiver of that defense, the Court has "'discretion to reach a waived issue . . . [when] 'the issue presented is purely one of law and . . . the pertinent record has been fully developed.'" *Id.* (quoting *McCoy v. Clark*, 766 F. App'x 521, 524 (9th Cir. 2019) (quoting *In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 992 (9th Cir. 2010)).

The Court in its discretion reaches the issue of administrative exhaustion of Plaintiff's claims as to Dr. Loberg because Dr. Loberg asserted administrative exhaustion as a defense in his Answer, "summary judgment based on exhaustion is a purely legal issue," and "the record has been sufficiently developed such that . . . consideration of the issue would not prejudice [Plaintiff's] ability to present relevant facts that could affect [the] decision." *McCoy,* 766 F. App'x at 524; *In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d at 993 (quotation omitted).

Plaintiff appealed only two grievances through the end of the grievance procedure neither of which related to issues that are the subject of Plaintiff's claims here. The Court, therefore, concludes that Plaintiff did not exhaust his administrative remedies with respect to Dr. Loberg. Accordingly, the Court grants judgment for Dr. Loberg on Plaintiff's claims.

## II. Merits

Even if Dr. Loberg waived exhaustion as a defense, the Court finds that Plaintiff has not established that Dr. Loberg was deliberately indifferent to his medical needs.

### A. Standards

"[C]laims [under § 1983] for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (internal quotations omitted). Under *Gordon* the plaintiff must establish four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. *See also Norbert v. City & Cnty. of S.F.*, 10 F.4th 918, 928 (9th Cir. 2021) ("Precedent teaches that the Fourteenth Amendment is more protective than the Eighth Amendment because the Fourteenth Amendment prohibits all punishment of pretrial detainees.") (simplified and citation omitted). To satisfy the "objective [deliberate indifference] standard, a plaintiff must 'prove more than negligence but less than subjective intent - something akin to reckless disregard.'" *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (quoting *Gordon*, 888

F.3d at 1125). A plaintiff must prove something more than medical malpractice or a difference of opinion concerning the course of treatment. *See Saddozai v. Bolanos*, No. 20-16862, 2022 WL 501124, at *1 (9th Cir. Feb. 18, 2022) ("medical malpractice, negligence, or a difference of opinion concerning the course of treatment does not amount to deliberate indifference") (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057-60 (9th Cir. 2004)); *Berry,* 2026 WL 771971, at *6 ("inadvertent failures to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain a claim under Section 1983) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976), *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

**B. Analysis**

Plaintiff alleges Dr. Loberg was deliberately indifferent to his medical needs when he (1) denied medication prescribed by Plaintiff's pain-management physician, (2) denied Plaintiff access to the Medication Assisted Treatment ("MAT") program, (3) denied Plaintiff's request for a "weight loss pill," and (4) denied initial and secondary MRIs of Plaintiff's spine.

**i. Prescribed Pain Medication**

Plaintiff asserts Dr. Loberg was deliberately indifferent to his medical needs when he denied Plaintiff the hydrocodone that Plaintiff had been prescribed for back pain before his detention. Dr. Loberg explains in his Declaration that "[t]here is no medical evidence of benefit from opioid pain medications for chronic back pain and instead [it] presents more risk of harm." Loberg Decl., ECF 55, ¶ 5. Plaintiff was "continued on all other medications like muscle relaxers and Gabapentin and given a trial of Duloxetine which does have an indication for chronic back pain." *Id.* In addition, hydrocodone is "an opioid and against the relevant medical standards and jail policy." *Id.*

Plaintiff has not established that Dr. Loberg's denial of hydrocodone was anything more than a difference of opinion concerning a course of treatment or that Dr. Loberg did not take reasonable available measures to abate a substantial risk of Plaintiff suffering serious harm. Accordingly, the Court grants Dr. Loberg's Motion for Summary Judgment as to this claim.

**ii. MAT Program**

Plaintiff asserts Dr. Loberg was deliberately indifferent to his medical needs when he denied Plaintiff access to the MAT program. Dr. Loberg states in his Declaration that he was not involved in the decision to deny Plaintiff access to the MAT program and Plaintiff admitted at deposition that he does not know who denied him entry into the MAT program. Loberg Decl., ¶ 7; O'Hanlon Decl., Ex. 1 at 72-73. In addition, on November 3, 2022, when Plaintiff was lodged in Marion County Jail, deputies completed an inmate medical questionnaire in which Plaintiff answered "no" to the question "will you withdraw from any drugs including opiates?" Davis Decl., Ex. E at 2. On March 29, 2024, more than 16 months later, Plaintiff asserted for the first time that he suffered the effects of opiate use disorder and requested to be enrolled in the MAT program. *Id*., Ex. F at 217. Plaintiff was denied on the basis that he did not have any documented opiate use disorder. *Id*. On May 27, 2024, Plaintiff was also informed that the MAT program wait list was four weeks long, therefore, they were "prioritizing inmates in active drug withdrawal." O'Hanlon Decl., Ex. 4 at 12.

Plaintiff has not established that Dr. Loberg denied him access to the MAT program, that denial of access to the MAT program put Plaintiff at substantial risk of suffering serious harm, or that the failure to place Plaintiff in the MAT program caused Plaintiff

serious harm. Accordingly, the Court grants Dr. Loberg's Motion for Summary Judgment as to this claim.

**iii. Weight Loss Pill**

Plaintiff asserts Dr. Loberg was deliberately indifferent to his medical needs when he denied Plaintiff's request for a "weight loss pill," which hindered Plaintiff's ability to get back surgery because Plaintiff had to lose weight before he could undergo surgery. O'Hanlon Decl., Ex. 4 at 9 ("counseled on necessity of weight loss, elective pre-surgical goal is BMI < 35"). Dr. Loberg did not place Plaintiff on weight loss medication "due to funding issues at Marion County Jail." Loberg Decl. ¶ 6. Plaintiff, however, had "session with a physical therapist . . . who instructed him on a home exercise program and recommended using a 4-wheel walker instead of a cane to improve mobility and pain." *Id.* ¶ 4. Plaintiff "was [also] advised to follow a low-calorie diet and exercise as he was able." *Id.* ¶ 6. By January 23, 2025, Plaintiff's BMI was down to 37, "[t]herefore, OHSU recommended further work-up tests including a hip x-ray and EMG/NCV and physical therapy," which Dr. Loberg recommended. *Id*. MRIs of Plaintiff's spine taken April 29, 2024, and March 7, 2025, did not show any "significant interval change." *Id.* at ¶4.

Plaintiff has not established that Dr. Loberg did not take reasonable available measures to abate a substantial risk of Plaintiff suffering serious harm when he denied Plaintiff weight loss medication or that the failure to provide Plaintiff with weight loss medication caused Plaintiff serious harm. Accordingly, the Court grants Dr. Loberg's Motion for Summary Judgment as to this claim.

**iv. MRIs**

Plaintiff alleges Dr. Loberg was deliberately indifferent when he denied Plaintiff's request for an MRI in October 2023 and denied a second MRI in January 2025.

Plaintiff alleges that on October 5, 2023, he began experiencing severe pain down his right side and knee. Plaintiff "requested an MRI of his back." Loberg Decl. ¶ 3. Dr. Loberg explains in his Declaration that "MRIs are done to evaluate need for surgery and on [his] examination of Plaintiff, [he] did not see any examination findings that correlated with the need for surgery." *Id.* Because Plaintiff continued to have back pain, however, Dr. Loberg "referred Plaintiff to OHSU Neurosurgery and an MRI was ordered for part of that evaluation." *Id.* Plaintiff had that MRI on April 29, 2024. On June 3, 2024, Dr. Loberg requested a follow-up appointment/consultation with the OHSU spine center due to Plaintiff's increased back and leg pain. O'Hanlon Decl., Ex. 4 at 15. The specialist recommended Plaintiff lose weight to achieve a BMI less than 35, engage in physical therapy, and continue pain medication. *Id*. On September 11, 2024, Dr. Loberg referred Plaintiff for an EMG/NCV of his right and left legs "to compare or correlate with [the April 2024] MRI of [Plaintiff's] lumbar spine.] O'Hanlon Decl., Ex. 4 at 18-19. "Due to continued back and leg symptoms, [Plaintiff underwent] a repeat MRI of the lumbar spine . . . on March 7, 2025, and this showed no significant interval change from the April 29, 2024 MRI." Loberg Decl. ¶ 4.

The record reflects Dr. Loberg took reasonable available measures to abate a substantial risk of Plaintiff suffering serious harm when he ordered both MRIs and that the timing of the MRIs did not cause Plaintiff serious harm. The Court, therefore, concludes Dr. Loberg was not deliberately indifferent to Plaintiff's medical needs when Plaintiff received his first MRI in April 2024 and his second MRI in March 2025. Accordingly, the Court grants Dr. Loberg's Motion for Summary Judgment as to these claims.

## CONCLUSION

The Court GRANTS County Defendants' Motion for Summary Judgment, ECF 58, and GRANTS Defendant Loberg's Motion for Summary Judgment, ECF 54.

IT IS SO ORDERED.

DATED: August 27, 2026.

MARCO A. HERNÁNDEZ
United States Senior District Judge